We have six cases on our docket this morning. One will be on the briefs, and one will be in a closed courtroom. So there'll be four. We'll take a break at some point, not sure when. But we'll start with 23-4019, United States v. Sandoval-Flores. Mr. McMurray. Good morning. May it please the court. My name is Benji McMurray. I'm here on behalf of Mr. Sandoval-Flores. It's great to be with you. And last night, I had a delightful dinner with opposing counsel, Mr. Murray. And after dinner, I told him I was going to stay up all night until I found the winning argument. I guess we'll see if I stayed up late enough. Does Mac mean son of? It does. That's an interesting combination. Yes. Yes, it does. I can point that out. It does indeed. We'll have to check our genealogy later. There are two issues in this case, and I think the most important thing that I would like to ask the court to do is to, well, the issue of the appeal waiver, in my view, is of vital importance to our system of justice. Because one of the things that happens with appeal waivers is it undermines the separation of powers by shifting significant control over the correctness of judicial proceedings from the court to the prosecutor, to the executive branch. And it entrenches errors that really shouldn't be countenanced in the judicial process. Prosecutors have a lot of discretion. That's right. You're not going to get rid of that. Well, no. Of course not. Nor am I suggesting that plea bargaining should be done away with because of any kind of imbalance. What I'm suggesting is that the big problem with waivers is that it's one thing to waive something that's already happened and that you know about. But when you waive issues prospectively, what it does is it creates a very real possibility that the court, at sentencing, could make an error. And I see no sound policy reason for the judicial branch to immunize the government from its own errors. It seems to me that if an error is plain and should not have been made at sentencing, that a defendant should have the ability to pursue relief under that claim. And I think that this is firmly established in this court's precedent in Hahn. What we're talking about today is the enforceability of a waiver under Hahn. And the government is right that we drill it down of the three or four possibilities for waiver. We're on the last category talking about a miscarriage of justice. Of the categories of the miscarriage of justice, we're talking about whether the waiver or enforcement of the waiver is otherwise unlawful. Now, the court in Hahn says that what this means is that if the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. This is the standard that appellate courts use to review an error that has been made but not preserved. And the reason that courts- Well, how have we interpreted that since then? Haven't we pretty much limited to an error in the- that the waiver wasn't- You have- The waiver itself is defective. You have. And I would like to urge the court today- To overrule our precedent? Just think twice about that. You don't actually have to overrule that precedent. But I would urge the court to be very mindful of that and to acknowledge the problems that are solidified when this fourth prong of miscarriage of justice is so narrowly construed. Counsel, we- Let me- Go ahead. I just have a tiny question. I just want to confirm that you're not actually challenging the waiver itself? I don't think so. No. Okay. Thank you. And isn't it true that in Booker, the United States Supreme Court said one of the things you do with a plea agreement is you give up the benefit of later established law? I don't remember them saying that in Booker. There certainly is a strong flavor of that in numerous appellate decisions. And I think that one of the issues- So with respect to being able to take advantage of future changes in the law, what I'm going to suggest here in a moment is that we shouldn't have kind of an across-the-board analysis that says you can or you can't benefit from future changes in the law. What I'm going to point out is at a minimum there are certain types of changes in the law that must be able to be challenged. Now, the standard that this court has taken, I think, has really only been articulated in part through the government's briefing. And I'm going to quote here from U.S. v. Sandoval, 477 F. 3rd 1204 at page 1208. The court describes this fourth prong saying, our inquiry under the fourth exception is not whether the sentence is unlawful, but whether the waiver itself is unlawful because of some procedural error, or because no waiver is possible. And it's this second part of the statute, of this language, that I think the government has not really engaged with. Because what we've done in our brief is we've identified a couple of types of errors that by their nature cannot be waived. No waiver is possible. And I guess the first of those is you're claiming this affects subject matter jurisdiction.  Yes. Subject matter jurisdiction cannot be waived. The government, of course, cites Oliver from the Seventh Circuit, which, in my opinion, I think they just kind of dance around this issue. And they almost get at it backwards, and they say, well, if this were jurisdictional, then courts couldn't view the argument as waived or forfeited. And courts routinely find this argument to be waived or forfeited. Therefore, it can't be jurisdictional. What I would suggest is that those other courts haven't really taken long enough to think about the nature of this problem. Because what Davis has done is it has taken 924C, and it has said, a 924C based on certain types of offenses don't constitute federal crimes. They just don't. But the court has jurisdiction to determine which justification it falls under to be a crime of violence. Yes. Yes. So there is jurisdiction, but if the court reaches a certain determination, the defendant is not guilty. Yes. Well, not only are they not guilty, but they can't even be prosecuted, because the court lacks jurisdiction. I think the principle you're touching on comes from United States versus Mine Workers, 330 U.S. 258, which back in the 1940s, the Supreme Court said that a federal court always has jurisdiction to decide its own jurisdiction. And I think this is the principle that the Seventh Circuit and Oliver missed. Because what they said is, well, what if it's still good under the Elements Clause? And the problem there is that that may save a prosecution, but the court first has to decide, is this 924C predicate one that actually falls within the scope of 924C? Well, the government usually gives up something at a plea bargain also, and often it's dismissing other charges. Right. And it seems very unfair to hold the government to its plea bargain, and so it can't prosecute other charges that could have been pressed, which might be totally protected against, totally immune from any challenge. But they gave that up. Yes. So that's unfair to let the defendant throw out one of the claims when it's virtually in practice anyway, impossible for the government to pursue the other claim. There's a certain appeal of that argument, right? Yes, there is. It doesn't solve the question. And let me just point out, in this case, you know, the government says, oh, we were so generous, we made this deal, we dropped charges. What the government overlooks and what they gloss over is that they came at this defendant with a statutory minimum of 85 years and said, if you don't plead and you go to trial, which you're almost certainly going to lose, you're looking at 85 years in prison. I would not say that this is a real even-handed kind of fair exchange. And what we see is mandatory minimums throughout the federal system driving plea bargains, driving outcomes, and again, taking the decisions out of the hands of the court and putting them in the hands of the prosecutor. Now to your concern, Judge Hartz, federal law actually takes this into account under the sentencing package doctrine. This is a doctrine that's been around since the 1980s. And what it says that if Mr. Sandoval Flores were to prevail and vacate this one count, it's not that we just have to suddenly carve out the sentence that was attributable to the 924C, but rather, the district court would then have to revisit the entire sentencing package and consider what sentence is appropriate on the facts of this case. And quite frankly, I think there's ample authority and experience out there that suggests that the guideline measure of punishment better approximates 3553A than the heavy-handed influence of statutory minimums like 924C. So we've got to attack a lot of pretty settled ball here, don't we? Well, I don't think so. Because I think that Sandoval, I don't know if they're related, Sandoval and Sandoval Flores, but Sandoval tells us that undeniably, this fourth prong of a miscarriage of justice applies when no waiver is possible. You can't waive jurisdiction, and you can't waive a claim that you're actually innocent. How can he be actually, if you don't even argue in your brief that he's actually innocent of the charges that were dropped? That's right. And the case law is pretty clear for him to win on an actual innocence claim. It's not just the charge that remained in. He has to be actually innocent of the ones that were dropped as well. Would you agree with that statement? Kind of. The case law is clear that in a different context, you have to show actual innocence of all charges. But I don't think the case law says that in connection with the enforceability of appeal waivers. What I think the court is touching on is a line of cases that goes back to Bowsley. And the issue in Bowsley was whether a claim should be, whether the court should reach the merits of a claim that was procedurally defaulted. And the Supreme Court in Bowsley said that actual innocence is a reason to overcome procedural default. But they also say in order to show actual innocence, you have to show that you're actually innocent of all these other charges as well. And I think this kind of goes back to Judge Hartz's concern as well. And if you look at the McKinney case, I think the McKinney case very nicely separates these two issues. Because McKinney talks about actual innocence and cites Bowsley in connection with its discussion of procedural default. But it does not come up in its question of the enforceability of the waiver. And the Fourth Circuit is clear, if you're innocent of a crime, that's not barred by an appeal waiver. And I think that when we look at the miscarriage of justice standard as articulated in Hahn, what we're talking about is against this general enforceability of appeal waivers and collateral review waivers, there are some types of waivers that we are not going to enforce because it's contrary to public policy. And it seems to me that a claim that a person is innocent of the crime that they have been convicted of committing, what greater injustice is there than incarcerating a person for decades because of a crime for which they were innocent? Again, under the sentencing package doctrine, the court can capture everything that's there. But what shouldn't be captured is this crime for which he is innocent. Why shouldn't we set the whole plea of bargain aside and let him go back to having the risk of 83 years in prison? So that's an interesting... I mean, that'd be fair that everybody's in the same position. That is an interesting possibility, and I'm not sure if it would be available here. The government, the parties on remand could certainly argue what remedies are appropriate in light of this court's ruling. And the government may well have a position to say, look, we bargained for this. We've lost it. We want a do-over. Maybe there's some precedent to do that. I can tell you for sure that in the context of 11C1C, I think that's the case. If this had been an 11C1C plea where Mr. Sandoval-Flores had said, I'm agreeing to this exact sentence, we get a count vacated. Now it goes back on remand. And if he asks for a different sentence, Rule 11C1C, I think, would very readily allow the government to move to reopen the plea. I've got to stop you. You've got 30 seconds. I always look forward to an argument when your name's on the brief, because it's always interesting. But there are three grounds on which you can lose here. Yes. You have an address, too. And those are pretty solid, aren't they? Well, the second one, I don't think so. And I think that... You agree the third is? Yes. Okay. Yes. So we don't need to reach this. You could rule on the merits and avoid the waiver question. And if I were to lose, that's probably how I would want to lose. And the third one being that... On the merits. That the offense is... It's harmless error at the most. Yes. My time is up. Could I say one sentence to each of those two issues very quickly? One sentence each, yes. With respect to the second issue, the gatekeeping issue is problematic in this statute that has only two alternatives compared to the ACCA that has three. On the third issue, with respect to the force clause, the government has not really engaged the language we cite in Taylor or Judge Pryor's dissent that simply says, an attempt to commit a crime does not constitute an attempt to commit any element. There are many non-violent, non-forceful ways to take a substantial step. Thank you. Thank you. May it please the court, Tyler Murray on behalf of the United States. With respect to the notion that the United States came at Mr. Sandoval-Flores excessively hard, let me remind the court that Mr. Sandoval-Flores opened fire on four law enforcement agents. He hit one in the head and one in the chest. These were serious crimes, heavily litigated, that resulted in a heavily negotiated and bargained for plea agreement in which the United States gave up important claims, including two attempted murder claims. And so, on those grounds, this was a very important plea agreement and the waiver was an important part of that plea agreement. Under my good friend, Mr. McMurray's theory, that there are certain things that you just can't waive, including the fact that a subsequent change in a law should not be able to be waived. That would effectively make appellate and collateral attack waivers largely meaningless in many events because you're only giving up then challenges that would not succeed. And many courts have analyzed that very situation, including this court, and have said that those waivers are enforceable despite subsequent changes in the law. Although it is hard to say it's knowing when you don't know what the change in the law might be. I mean, there is an argument there that to distinguish between known and unknown. That's true, Your Honor, and part of the risk of entering into a plea bargain is that you allocate those risks. Plea bargains are contracts, and other circuits, and this circuit, have said that they should be interpreted as contracts, and they allocate that risk. And in fact, the Supreme Court did say in the Brady case, which was a case we cited in our brief, and it involved a situation where a man pled guilty under the threat of potential death penalty, a death sentence. And he pled guilty, but then a later ruling indicated that the death sentence was no longer at issue for him, and he said, I should be able to challenge that. And the Supreme Court said, a voluntary plea of guilty, intelligently made in light of then applicable law, does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. That's the situation we have here. He took this risk, and whether you now couch the change in law as a new constitutional challenge, or a jurisdictional challenge, that means it doesn't matter. He has waived those, waived that. Well, Counsel, could I get you to address his argument about this is jurisdictional? Sure, certainly, Your Honor. Well, two things. One, whether it's couched as being jurisdictional or constitutional, the Supreme Court nor this court have said that those types of challenges are not subject to a waiver. They can be waived, and they are consistently waived. And the other important point is that we still have 924C3A, which is, the jurisdictional argument is sort of circular because it requires the fact to say that he can't be guilty of 924C3A, which if he can, then this court has jurisdiction. And so the court still has the power. It's not, as Judge McHugh mentioned, it's not a question of the court's power to engage in this case. It has jurisdiction to entertain this challenge. But what if the analysis is that it had to be the residual clause? So then does that divest the court of jurisdiction and makes it impossible to waive? I think then we're just there that he has waived the constitutional challenge, that he's waived the constitutional challenge to that statute. He took the risk and waived that. And so when 20 years later, after he's convicted and sentenced and Davis comes out, we don't upset that Alpocart. He still waived it. And so I think that's part and parcel of the kinds of things that can be waived and that have been held by, he mentioned the McKinney case. McKinney is really an outlier. The courts in the Second, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuit have all held that Davis challenges are subject to appellate waivers. And those cases are cited in our brief. With respect to the other challenge that the court mentioned, you know, if the waiver is problematic at all, which I don't think it should be, I think it's important to point out that this waiver, there's no challenge that this claim is within the scope of the waiver. There's no challenge that this waiver was knowing involuntary. There's, and with respect to whether there was a manifest injustice here, our court, our precedent in this circuit, in Cockrum, Hahn, Holzer, other cases, including Fraser LaFeer, which was an unpublished case but persuasive, the manifest injustice prong looks at whether it would be manifestly unjust to enforce the waiver itself. It doesn't go to the underlying outcome of the proceeding. It just talks, you're just focused on the waiver here. And when we're looking at a waiver, whether it is otherwise unlawful under that analysis, we're looking at whether there is a problem in the process or something that's not waivable. Under Hahn itself, though, that probably is a broader or a different reading than Hahn, isn't it? I mean, the law seems to have developed after Hahn in a way that you're correctly stating, but I'm not sure that's entirely consistent with Hahn. Perhaps not, but those later court cases do inform what Hahn meant and how it has been applied. And that was not specifically an issue in Hahn. No, it was not. It was not, Your Honor. And so with respect to that challenge, his challenge goes to the underlying proceeding and not the waiver itself. The waiver itself is, as Judge E pointed out, I pointed out that it is not subject to challenge in this case. Now, with respect to the other issues here, let me just point out that courts, every court, every circuit that has considered this issue, including the 1st, 2nd, 4th, 6th, 7th, 8th, 9th, and 11th, and in fact this case, this court, in an unpublished decision in Ivory, have found that attempted murder, in any event, is a crime of violence under the Elements Clause. And the reason for that is straightforward and it's the same analysis that this court engaged in in the unpublished but persuasive Rayford Cage, which was when a completed crime necessarily involves the use of force, then an attempt to accomplish that crime likewise requires the use of force. An attempt crime is, you have the intent to kill, or excuse me, an attempted murder requires an intent to kill, and it requires a substantial step toward that end. And when you have an intent plus a substantial step towards the use of force, you've categorically attempted to use force in that situation. With respect to the criticism that we failed to engage with Taylor, indeed we have in the way that all the other circuits that have dealt with this have, and they've recognized that Taylor is a function of the statute that was at issue in Taylor, which was the Hobbs Act robbery statute, which can be completed through a threat. Attempted murder cannot be, or murder cannot be completed through a threat. And so in Taylor, the court found that attempted murder, excuse me, attempted Hobbs Act robbery, because it could be accomplished through an attempt to threaten, was not categorically a crime of violence. Attempted murder is fundamentally different than that. And as this court said in the Ivory case, in a similar situation, that no reasonable jurist can dispute that attempted killing of a witness is not a crime of violence. With that, unless the court has other questions. Thank you, counsel. Thank you. Thank you, counsel. Case is submitted. You can both be excused. We'll turn to our next case now.